UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **OLIVIA ELISE JONES**<br>          **PLAINTIFF,** § § § | |
| **v.** § | **CASE NO. _____** |
| § | |
| **BOARD OF REGENTS OF** § | |
| **UNIVERSITY OF HOUSTON** § | **JURY REQUESTED** |
| **DEFENDANTS.** § | |

## PLAINTIFF OLIVIA ELISE JONES' ORIGINAL COMPLAINT

1.      This case alleges a violation of due process under the Fourteenth Amendment.  Such is codified under 42 U.S.C. §§1983 and 1985.  This cause of action also arises under Title II and Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. Section 12101, et. seq., as amended, and section 504 of the Rehabilitation Act of 1973, as amended.  This case also involves Title VI of the Civil Rights Act, 42 U.S.C. §2000d, as amended.  Further, the Civil Rights Act Attorney Fees Act, as amended, is applicable to this case under 42 U.S.C. 1988.

2.      This case also alleges state claims under pendent or supplemental jurisdiction for the Texas Deceptive Trade Practices Act.

3.      Jurisdiction of this Court is invoked under 28 U.S.C. §1343 (1).

4. The acts or omissions which serve as the basis for this cause of action occurred in Houston, Harris County, Texas, and venue is proper in the Court under 29 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff Olivia Elise Jones ("Jones") is twenty-five years old. She currently resides in Houston, Harris County, Texas.

6. Defendant Board of Regents of University of Houston ("Board") was created by the Texas Legislature. The Board may be sued by serving its Chancellor, Renu Khator, at 4800 Calhoun Road, Houston, Texas 77204.

## FACTUAL BACKGROUND

**Background**

7. Olivia Elise Jones is an African-American female.

8. Jones attended Baylor University ("Baylor. She graduated from Baylor University in May 2014.

9. While at Baylor, Jones became more interested in becoming an optometrist. On the campus of Baylor, she was introduced to an optometry program offered by the University of Houston ("UH").

10. She applied for their optometry program and was accepted into their summer program in May of 2014.

**The TEXOCOP Program**

11. UH created the Texas Optometric Career Opportunity Program ("TEXOCOP") in 1987 in order to enhance the diversity of the optometry field.

12. The six-week summer program was designed to recruit and retain underrepresented minority students and replicate the rigors of UH's College of Optometry ("UHCO") doctorate program.

13. After completion of the summary program, students would later be notified whether they were admitted into UHCO.

14. The program is no longer listed as an offering on UH's website.

**First year of Optometry School**

15. After completion of TEXOCOP, Jones was notified that she was admitted into UHCO in the class of 2019. She began the optometry program in August of 2015.

16. In November 2015, Jones began experiencing serious health complications that required her to go to the emergency room. She notified professors and members of administration about her hospitalization.

17. The emergency room visit occurred near the time lab finals. She messaged two professors. One professor allowed her to reschedule her exam. The other professor stated that it would be too difficult to reschedule her. She obtained a poor grade in that class as a result.

18. Jones was diagnosed with Polycystic Ovary Syndrome ("PCOS") and Endometriosis, as well as Attention Deficit Disorder ("ADD").

19. In February 2016, Jones informed UHCO Office of Optometry Relations Mr. Lyle Tate ("Tate"), Associate Dean of Student Affairs and Accommodations Liaison Melissa Mares ("Mares"), and Associate Dean Kimberly Lambreghts ("Lambreghts") that she was going to need surgery to address her painful reproductive health condition. She also informed faculty that she would be limited in her ability to sit, stand and walk for extended periods of time.

20. She decided to wait before she had the surgery because the surgery required her to be limited and/or out of school for approximately six months.

21. Jones attended at least five doctor's appointments and one hospitalization during the spring semester of 2016.

22. Professor Applegate ("Applegate") contacted Dr. Lambreghts about Jones missing class and special accommodations.

23. Despite notifying staff, Jones was not afforded accommodations required as part of UH's compliance with the Americans with Disability Act ("ACT") and Section 504 of the Rehabilitation Act.

**Second Year of Optometry School**

24. During the fall semester of 2016, Jones continued to suffer chronic pain during her second year of optometry school. However, the pain affected

4

Jones' class attendance. She had at least four doctor's appointments that required her to miss work.

25. During this semester, Jones was required take UHCO's Competency Exam. This exam requires students to demonstrate that they are have mastered the prerequisite clinic knowledge necessary for a second-year student to enter General Clinic – OPTO 6291 and are able to see patients in the University Eye Institute Family Practice Service.

26. The requirements for OPTO 6291 are listed in the handbook that is on the website of the optometry.

27. Jones passed her exam, thereby meeting the requirements to attend the annual White Coat Ceremony.

28. After taking her exams in December 2016, Jones received a grade of "F" in OTP 6363 and a C in OPTO 6163. These courses were taught by Dr. Janice Wensveen ("Wensveen"), who is married to UHCO Dean Dr. Earl L. Smith III ("Smith").

29. Jones contacted Wensveen prior to the final exam to discuss preparation for the final exams. Wensveen denied her request to review the prior exams before the final exam.

30. Wensveen denied Jones' request to discuss the final exams and the grades given for those classes. Wensveen did not have a grading scale in her syllabus by which to determine the basis of the grades.

31. Jones then contacted the Office of Optometry Relations regarding repeating the OPTO 6363 course. She was told that OPTO 6363 was a prerequisite to attend the White Coat Ceremony, despite that requirement not being in the UHCO handbook.

32. The basis for her denial to attend the White Coat Ceremony was the handbook located on the main campus' website, which had different requirements than the handbook located on the optometry school's website.

**Dr. Lambreghts' Threats**

33. Jones contacted Lambreghts, who threatened her and told her that she was not allowed to speak to the Dean. Jones was told to "tread lightly" and to "watch herself." Lambreghts indicated that she made the rules and that Jones was not allowed to have a grade appear hearing. Lambreghts also stated that Jones was barred from contacting any of Jones' professors or the Dean about Lambreghts' decision. Jones was threated to be found guilty of unprofessional conduct if she tried to appeal Lambreghts' decision about Jones grades or Jones not being allowed to attend the White Coat Ceremony.

34. Jones and her parents contacted Dean Smith, but they did not get an answer.

35. Jones and her parents then contacted Mares.  She requested to speak with Dean Smith and sent a follow-up email to Mares with the same request and concern about Lambreghts' threats.

36. On December 20, 2016, Jones received a letter via email that was backdated to December 15, 2016, stating that she was suspended from UHCO for earning 4 grades below a C in one semester.

37. On the same date, Mares emailed Jones stating that Jones had to do whatever Lambreghts' stated and that she was denied the right to appeal the grades assigned to her.

38. Mares specifically stated that "trying to find a loophole isn't going to be effective and will not be in the best use of your time and could be deemed unprofessional conduct so I caution you to only discuss things with me as the letter states."

39. On the same day, Jones email Dr. Heather Anderson ("Anderson"), UHCO's Academic Committee Chair, requesting a grade appeal hearing.

40. On the next day, Mares told Jones that Lambreghts ordered her to pull Jones' white coat out of the stack of white coats to be distributed and to destroy the

ceremony pamphlets because they contained Jones' name. Mares stated that Lambreghts had "hurdles set up" for Jones for questioning Lambreghts' authority.

41. The White Coat Ceremony is held on January 6, 2017. Jones was not in attendance.

42. Male students who failed OPTO 6363 were allowed to participate in the White Coat Ceremony.

43. Jones' parents flew from her original home in Dallas to meet and report the issues with UH Chancellor. They requested UH to investigate and protect Jones from Lambreghts.

44. Lambreghts notified the professors and the Academic Committee to remove Jones from the rosters.

45. Jones received an emailed from Dr. Ralph Herring ("Herring"), UHCO's Assistant Dean for Professional Studies, stating that "pending resolution of your academic status, you are to follow the limited curriculum which Dr. Lambreghts detailed in her December meeting to you."

**Spring 2017**

46. Jones submitted a letter to the Academic Committee Chair appealing her automatic suspension based on medical disability. On the same day, Jones's parents emailed Dean Smith regarding Lambreghts' threats, due process concerns, disability concerns and other issues. They asked for the Dean to intervene.

8

47. On January 17, 2017, a hearing was held by the Academic Committee.

48. On January 18, 2017, Dr. Jones met with Dr. Dimitri Litvinov ("Litvinov"), UH's Vice Provost & Dean of the Graduate School. He would contact UHCO. Meanwhile, he told her to follow the policies in the UHCO's Student Handbook during the investigation and to attend all courses she enrolled in.

49. Two days later, Litvinov met with someone at UHCO and stated he was no longer able to help her and that his "hands were tied." He stated that she would no longer be a student at UHCO. Shortly after the meeting, Litvinov resigned as the Vice Provost and Dean.

50. On January 21, 2017, Jones received the Academic Committee's decision letter. Her appeal was denied.

51. President Renu Khator sent a campus wide email to UH systems stating that they could contact her if confronted with a problem that they were unable to resolve. Jones responded to the email about what was going on in UHCO, but Jones did not receive any communication back.

52. On January 26, 2017, Jones called the Senior Executive Assistant to the President of UH about the problems she was dealing with in UHCO. She requested a meeting but the meeting was denied.

53. On January 27, 2017, Jones appealed the Academic Committee's decision.

54. On January 30, 2017, Jones submitted documentation to the Dean of her medical diagnoses.

55. On February 6, 2017, Dean Smith and Anderson disseminated Jones medical documentation to others without Jones prior knowledge or consent.

56. The Academic Committee wrote a letter to the Dean stating that they believed that they should not have to accommodate Jones disabilities and impairments.

57. On or about February 8, 2017, the Academic Committee upheld the previous decision to suspend Jones.

58. Jones and another African-American male were suspended from the program, which other non-African-Americans were reinstated in the program.

**Attempt at Readmission**

59. On February 28, 2017, Jones emailed Tate and Tiffany Robinson, employee in the UHCO department, a notification of readmission for the fall of 2017 per UHCO's readmissions after sanctions policy.  Tate's email sent an automatic response that he was out of the office.  Neither person responded to the email.

60. On March 8, 2017, Jones learn of the UH's Center for Students and Disabilities ("CSD"). The Academic Accommodations Evaluation Committee evaluated Jones disabilities and impairments and approved seventeen academic adjustments and accommodations. She was directed to report her issues to UH's Equal Opportunity Services Office.

61. She filed her complaint with the Equal Opportunity Services ("EOS") Office on April 10, 2017.

62. On April 17, 2017, Tate emailed Jones stating that her readmission application was sent to the "SPAM" folder in his email. Therefore, her request for readmissions was not considered by the Admissions Committee. UHCO was no longer accepting applicants for the fall of 2017.

63. Ian Armstrong ("Armstrong") was assigned as the investigator from the EOS. He received responses from Smith, Lambreghts, Dr. Boltz (Administration Chair, Accreditation Council of Optometric Education), Mares and Anderson.

64. On April 26, 2017, Jones files a complaint with the U.S. Department of Education, but the investigation was closed because the school or another agency was already investigating the same allegations.

65. On May 16, 2017, Jones requested assistance accommodations from the EOS via email.

66. On June 13, 2017, after more than 60 days had passed since the EOS complaint was filed, Jones filed with the U.S. Department of Justice, Education Opportunities Section. The investigation as forwarded to the U.S. Department of Education.

67. On June 23, 2017, Armstrong called Jones and asked her if she was seeking monetary compensation from UH. Jones stated that she wanted to get back into UHCO with protection from harassment, discrimination and retaliation. He also stated that another UH agency was investigating the dissemination of Jones' medical records.

68. On July 27, 2017, Dr. Anthony Baker of the EOS stated that UH was not going to provide her any form of interim accommodation during their investigation. He stated that she would have to contact the same administration in UHCO to get back in school.

**2018 School Year**

69. On September 9, 2017, Jones filed a complaint with the US. Department of Education, Office of Civil Rights.

70. Around this time, Jones found out that Armstrong resigned from UH. He did not notify her of his resignation.

71. Jones requested documentation through the Texas Public Information Act regarding emails among Smith, Lambreghts, Mares and the Executive Director

12

of UHCO. The requests were not given, so she contact the Attorney General regarding her requests.

72. Meanwhile, UH is sending Jones collection letters demanding payment of delinquent fees. Jones was not aware or nor did she accumulate delinquent fees to her account.

73. After contacting speaking with the Department of Education, Jones received an email from Daniela Monkiewicz, Director of Investigations from the EOS, regarding her complaint. The email contact was on November 10, 2017, but a letter contained in the email stating her appeal deadline had passed was backdated to April 10, 2017, from Ian Armstrong.

74. On January 5, 2018, Jones makes a video regarding the verbal abuse and harassment she endured at the hands of UHCO. Within the video was a recording of a conversation she had with Dean Smith. Approximately one month later, Dean Smith resigned.

## LEGAL ALLEGATIONS AND RELIEF

75. Paragraphs one (1) through seventy-four (74) of this complaint are incorporated by reference and made a part of Relief One through Six.

## RELIEF ONE

### Injunctive Relief

76. Jones has no plain, adequate or complete remedy at law to redress the wrongs alleged, and this suit for injunctive relief is the only means of securing adequate relief. Jones suffered, is now suffering and will continue to suffer irreparable injury from the Defendant's policy, practice, custom and usage, as set forth herein, until and unless enjoined by the Court. Fourteenth Amendment and 42 U.S.C. §§ 1983, 1985(3).

77. Jones asks the Court to order Defendant to lift retroactively all suspensions and disciplinary letters, and further, purge their records, files, and academic transcripts of all references to such suspensions and disciplinary letters. 42 U.S.C. § 1983.

78. Jones is entitled to prospective injunctive relief as to Defendant. 42 U.S.C. § 1983.

## LEGAL RELIEF

### Relief One

79. In intentional violation of the Fourteenth Amendment to the Constitution of the United States, codified as 42 U.S.C. § 1983, staff of the school of optometry acted arbitrarily and capriciously under color of law and proximately deprived Jones of her constitutional right of due process. The policies and procedures of the University of Houston allow for students to contest grades. However, Lambreghts purposed through threats and actions to end Jones'

academic career after she challenged the ability to participate in the white coat ceremony and sought accommodation assistance above and beyond Lambreghts. The wanton acts were oppressively done with malice. Therefore, Jones is entitled to compensatory and punitive damages.

## Relief Two

80.     Lambreghts, Mares, and others, acting under color of law, conspired against Jones to have her removed from optometry school and prevented from receiving accommodations. In furtherance of such conspiracy, she was prevented from appealing the grades received in certain classes, although the school's policy allows for a grade appeal. Jones is entitled to recover for conspiracy. 42 U.S.C. §§ 1983 and 1985(3).

## Relief Three

81.     In intentional violation of the Title II and Title III of the Americans with Disability Act and section 504 of the Rehabilitation Act of 1973, UH discriminated against Jones by refusing to consider her medical conditions despite multiple requests and absences with documentation, by arbitrarily declaring that her medical issues did not rise to the level of being a "disability," and by denying her accommodations and services as a result of having a disability. Additionally, Jones has a retaliation claim for the university refusing to adhere to her necessity for accommodations, for Lambreght specifically seeking to have her removed from

the program after requesting accommodations and questioning that student handbook, and for the university purposely not responding to her reapplication in order to prevent her from enrolling in the program, Jones is entitled to compensatory and punitive damages.

### Relief Four

82. Defendant violated the Texas Deceptive Trade Practices Act of the Texas Business & Commerce Code § 17.49(b)(1), (2), (3), (5), (12), and (24) when UH engaged in false, misleading, unfair or deceptive acts and practices. The acts and practices including but are not limited to the following ways: services and facilities available to students with disabilities; the appropriateness of its course and programs to the employment objectives that the programs are designed to meet; the nature and availability of any tutorial or specialized instruction, guidance and counseling, or other supplementary assistance UH will provide to its students, before during or after the completion of the course; the nature and extent of prerequisites established for enrollment in courses and/or the participation in events, services or extracurricular activities; the requirements for successfully completing the course or study or program; the circumstances that would constitute grounds for terminating the student's enrollment; deceptively publishing, distributing, marketing, and advertising conflicting versions of the UHCO's student handbook, course catalog, policies and procedures; TEXOCOP program;

UH's student bill of rights, and EEO's investigation into policies and procedures and providing services, rights and protections to Jones, who reported herself to be a victim of ongoing harassment, discrimination, and abuse.  UH's wrongful conduct caused injury to Jones, a consumer, resulting in actual and mental-anguish damages.  Jones is entitled to a trebling of damages due to the intentional and/or knowing acts of Defendant.  Defendant received notice as required by Texas Business & Commerce Code § 17.505(a).

### Relief Five

83. Jones was one of two African-Americans who were suspended from the UHCO program.  The Board has a history of reinstating non-African-American students in UHCO who were suspended for academic reasons.  Jones had a justifiable reason for missing class due to her disability status, yet she was not reinstated.  In an attempt to reapply and file complaints with the Office of Civil Rights and other entities, the Board retaliated against Jones.  Such discrimination was intentional.  Jones is entitled to compensatory and punitive damages.

### Relief Six

84. Under the Civil Rights Attorney Fees Award Act, Jones is entitled to reasonable attorney fees and costs.  42 U.S.C. § 1988.  Jones is entitled to recover reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code chapter 17.50(d).

## JURY DEMAND

85. Jones respectfully requests that, upon trial of this case, all issues of fact be determined by a jury pursuant to Federal Rule of Civil Procedure 38, except attorney fees and those issues specifically reserved by law for determination by the Court. Plaintiff tenders the appropriate fee with this request.

## PRAYER

Plaintiff requests the Court to cause Defendant to be cited to appear and answer in this Court, and upon final hearing, the Court grant to Plaintiff as follows:

1. Grant Plaintiff equitable and legal relief enjoining Defendant, their agents, successors, employers, and those acting in concert with them or at their direction from continuing to abridge the rights of Plaintiff;

2. Order the Board of Regents of University of Houston to rescind all suspensions and disciplinary letters of Jones and purge all of Jones' files, school records and academic transcripts of all disciplinary references;

3. Grant Jones actual and compensatory damages, including damages for pain and suffering;

4. Grant Jones punitive damages;

5. Grant prejudgment interest in the high amount allowed by law; and

6. Grant reasonable and attorney fees for all federal and state claims, together with their costs and such other and further relief as appears just and equitable in the circumstances of this case.

        Respectfully submitted,

        /s/  *ChiQuia J. Roberson*
        ChiQuia J. Roberson
        Attorney for Plaintiff
        Federal Admissions No. 866507
        Texas Bar No.: 24045328
        2700 Post Oak Boulevard, 21st Floor
        Houston, Texas 77056
        Telephone: 713-814-1119
        Facsimile: 832-383-3999

        ATTORNEY IN CHARGE
        OLIVIA ELISE JONES

OF COUNSEL:

ROBERSON LAW FIRM PLLC